## CONSTITUTIONALITY OF THE ELIMINATION OF GRADE CROSSINGS ACT.

Circuit Court of Summit County.

THE NORTHERN OHIO TRACTION & LIGHT COMPANY v. CITY OF AKRON.

Decided, October 12, 1912.

*Constitutional Law—Grade Crossings—Laws Compelling Street Railways to Bear Portion of Cost of Elimination of Grade Crossings Constitutional—Nature of Liability of Company.*

1. Sections 8892, 8893 and 8894 General Code, giving to municipalities the right to compel a street railway company to bear a reasonable portion of the cost to the municipality incurred in the abolition of railroad grade crossings, is constitutional, does not vest judicial power in a legislative body, does not deny due process of law, nor sanction the taking of private property for public uses without providing compensation.

2. When, upon the abolition of grade crossings in a street in which there is a street railroad, the municipality and the street railway company can not agree upon the portion of the cost to be borne by the street railway company, the municipality may, by ordinance, fix the amount to be paid by the company and institute an action in court for its recovery, but the recovery in such case will not be as upon a judgment, but for such amount as the jury shall determine to be a reasonable portion of the cost of the improvement.

*Rogers, Rowley & Mather*, for plaintiff in error.
*Jonathan Taylor*, contra.

WINCH, J.; MARVIN, J., and NIMAN, J., concur.

The sole question attempted to be reserved upon the record of this case is the validity of Section 8 of the act of May 2, 1902 (95 O. L., 356), and the amendment thereto adopted April 2, 1906 (98 O. L., 192).

The act of 1902 was an amendment of the original grade-crossing act of 1893 (90 O. L., 359). The first seven sections of the act of 1902 provide for the separation of grades where steam

railroads cross municipal streets at grade.   The constitutionality
of these sections is conceded in this action.

The eighth section of the act of 1902 reads as follows:

"In case the track or tracks of any street railway company
or companies within the limits of any municipality where the
improvements authorized by this act are made shall cross at grade
or otherwise a public street or the right-of-way of any railroad
company or companies at a point where, under the plans and
specifications provided for in this act, it has been determined to
construct the said improvements, the municipality shall have
power by ordinance to require such a street railway company
or companies to bear a fair and reasonable proportion of the
costs assumed by said municipality in the making of said im-
provement, not exceeding one-half the portion payable by said
municipality; provided, however, that said street railway com-
pany or companies shall keep in repair at its or their own ex-
pense all tracks affected by such improvement and all construc-
tion work of whatever character which may be necessary to
support such tracks."

On the 4th of August, 1902, the council of the city of Akron
took action toward the abolishment of the Mill street grade-cross-
ing in said city, by the erection of a viaduct over the tracks of
three steam railroads where they crossed said street.

On the 4th of April, 1904, the council passed an ordinance
requiring the traction company, whose tracks were located upon
Mill street, to bear one-half of the city's portion of the cost of
the Mill street viaduct, reciting that one-half of the city's esti-
mated cost of the viaduct was $36,000.

Later in the same year an ordinance was passed approving
plans for the viaduct and determining the proportion of the esti-
mated cost of the improvement to be borne by the three railroads
and the city.

Section 8 of the act of 1906 reads as follows:

"In case the track or tracks of any street railway company
or companies within the limits of any municipality where the
improvements authorized by this act are made shall cross at
grade or otherwise a public street or the right-of-way of any rail-
road company or companies at a point where, under the plans
and specifications provided for in this act, it has been determined
to construct the said improvements, the municipality shall have

power by ordinance to require such street railway company or companies to bear a fair and reasonable proportion of the cost assumed by said municipality in the making of said improvement, not exceeding one-half the portion payable by said municipality; *and the municipality shall have the right of action against any such street railway company or companies for such proportion of the said cost as said ordinance shall require said company or companies to bear, and such proportion of said cost shall be a lien upon all the property, both real and personal, of the said company or companies situated in the county in which the municipality is situated from and after the date of the passage of said ordinance;* provided, however, that said street railway company or companies shall keep in repair at its or their own expense all tracks affected by such improvement and all construction work of whatever character which may be necessary to support such tracks. *And the council, board of legislation or other legislative body of said municipality may by ordinance provide the mode and time or times of payment for the proportion of the cost of said improvement to be borne by said street railway company or companies.*"

The only change made by this amendment was the addition of the words in italics.

On August 3, 1908, the city passed the following ordinance:

"Section 1.    That the said the Northern Ohio Traction & Light Company be and it is hereby required to bear the following amount of the said cost of said improvement, to-wit: twenty-seven thousand nine hundred and ninety-one dollars and seventy-nine cents ($27,991.79), which said amount is hereby determined to be a fair and reasonable proportion of the cost assumed and paid by said city in the making of said improvement, and which said amount is not in excess of one-half of the part of the cost of said improvement assumed and paid by said city.

"Section 2.    That, unless the said the Northern Ohio Traction & Light Company shall pay the costs to be paid to said city of Akron, the said sum of twenty-seven thousand nine hundred ninety-one dollars and seventy-nine cents ($27,991.79) on or before eleven (11) days after the passage of this ordinance, the solicitor of said city is hereby authorized and directed to commence an action in a court of competent jurisdiction to enforce payment by said company to the said city of said sum, or to file a cross-petition for said purpose in a certain case pending in the Court of Common Pleas of Summit County, Ohio, entitled the Northern Ohio Traction & Light Company against the city of Akron, and being case No. 12552.

"Section 3.    The clerk of council is hereby directed to give notice of the passage of this ordinance to said the Northern Ohio Traction & Light Company by leaving a copy thereof at the office of said company forthwith upon the approval by the mayor.

"Section 4.    This ordinance shall take effect at the earliest period allowed by law."

Meanwhile, on December 14, 1904, the Northern Ohio Traction & Light Company had filed its petition in the cause now under review, asking that the city be restrained from assessing any part of the cost of said improvement against it.

After the passage of the amendatory act of 1906, the city filed its answer and cross-petition praying for judgment against the traction company in the sum of $27,732.92, which it alleged to be one-half of that part of the cost of the viaduct assumed by the city in its agreement with the railroad companies.

A demurrer to this cross-petition being sustained, the ordinance of 1908 was adopted and a new cross-petition filed upon which the parties went to trial, other pleadings being filed by the parties in the meantime.

This cross-petition contained an allegation that $27,991.79 was the fair and reasonable proportion of the cost assumed by the city in the making of said improvement which the traction company ought to pay.

The jury brought in a verdict in favor of the city in the sum of $18,916.66, about $10,000 less than the amount claimed by the city.

There is no bill of exceptions filed in this case showing the nature of the evidence introduced on the trial and the charge of the court, but attention being called to the fact that the verdict was less than the amount fixed in its ordinance by the city and claimed by it in its cross-petition, it was conceded by counsel on both sides that the court received evidence on the question of the fair and reasonable proportion for the traction company to pay, if anything, and charged the jury that the ordinance of the city was not conclusive upon that subject.

The small size of the verdict compels the conclusion that such must have been the case.

This fact is important, for the whole contention of counsel for the traction company proceeds upon the theory that Section 8 of the grade-crossing act, now found as Sections 8892 to 8894 inclusive, General Code, is unconstitutional, because it vests judicial power in a legislative body, denies due process of law and the equal protection of the law, and sanctions a taking of private property for public use without first providing compensation therefor.

If Section 8 *must* be construed as vesting in the city council the power to fix and determine the exact amount that a traction company must pay it when a separation of grades is determined upon at a crossing where street railroad tracks are upon the street, the contention of plaintiff's counsel would require more critical examination and review than seems necessary to a decision of this case, from another view of the grade-crossing act which seems tenable.

The city and the steam railroad companies are the only necessary parties to the abolishment of a grade-crossing. The street railroad company has nothing to say about the propriety of separating the grades; if the city decides that the railroad tracks must pass over or under the street and an agreement is made with the railroad company, or the mode and manner of crossing is determined according to law, the street railroad company must adapt itself to the change and go with the street, over or under the railroad tracks.

The separation of grades, however, is manifestly beneficial to the street railroad company; it renders the movement of its cars safer and quicker.

The burden of the street railroad upon the street increases the cost of the change, particularly in the case of a viaduct, for it must be built of a width to accommodate the tracks and the general public, and of a strength to sustain the heavy traction cars, which weigh many tons more than other vehicles.

It would seem that for the benefits thus received the traction company should pay, even in the absence of a statute on the subject, and the statutes under consideration are only a declaration of what natural justice should require, even though no decisions

on the subject have crystallized the law of the land with respect to such conditions. This statement, of course, applies only to the declaration of the *rights* of the parties under the relations created by the necessity for a separation of grades; it is not meant as authorizing one of the parties to determine the liability of the other, finally and without other formality.

Now, with this view of the law, what did Section 8 of the act of 1902 provide? That "the municipality shall have power by ordinance to require such street railroad company or companies to bear a fair and reasonable proportion of the cost assumed by said municipality in the making of said improvement, not exceeding one-half the portion payable by said municipality."

This authorizes the city to come to an agreement with the street railroad company as to what is fair and reasonable for it to pay and to settle with it for that amount, the action of the city being confirmed by ordinance, a proper and formal way of recording its action. The limitation "not exceeding one-half the portion payable by said municipality," is for the benefit of the street railroad company.

This section does not specify *how* the city shall require the street railroad company to pay; it does not authorize the city by ordinance to determine *what* amount is fair and reasonable.

It seems that this section would authorize the city, if it could not come to an agreement with the street railroad company as to how much it should pay towards the improvement to "require" it to pay a fair and reasonable proportion thereof by proceeding against it according to law.

Suit brought, as in this case, by the filing of a cross-petition setting up all the facts with regard to the improvement, its cost and the benefits supposed to flow to all the parties therefrom, leaving to a jury under the direction of a court to determine from all the facts presented in evidence what was fair and reasonable for the street railroad company to pay, if anything; under all the circumstances, would be according to law and violate none of plaintiff's constitutional rights.

The presumption is in favor of the judgment in this case and such a trial must have been had.

This view of the statute makes it constitutional. It is a universal rule in the construction of statutes that they shall be held by the courts to have a constitutional operation if it is possible to give them such operation.

The amendment of Section 8 in 1906, was an effort to make this effect of the act of 1902 clearer, but it is doubtful if it has served such purpose. The words then inserted were: ''and the municipality shall have the right of action against any such railway company or companies for such proportion of the said cost as said ordinance shall require said company or companies to bear.''

If this amendment means that the city can sue for the amount determined by its ordinance *as upon a judgment* and recover that amount or more, then the amendment might be invalid. If it means that the city might by ordinance determine what was fair and reasonable in its judgment for the street railroad company to pay, being unable to agree with the company on the amount, if any, which it in justice should pay, present a bill therefor and, if not paid, sue on such bill, then it would be constitutional. It would be according to the practice of all creditors, who make out their own bills and, if not paid, sue on them, claiming the full amount that they themselves think ought to be paid. At the trial the proper amount due the plaintiff is determined, without regard to what he thinks he should receive.

That course, we understand, was followed in the trial here under review.

An examination of the ordinance of August 3, 1908, shows that it was a mere statement of what the council thought the traction company should be required to pay as its fair and reasonable proportion of the cost of the improvement, and that said amount was not more than one-half of the cost assumed and paid by the city with directions to its attorney, the city solicitor, to bring suit for that amount if it was not paid in eleven days after the claim was presented to the company.

We are not required to give this ordinance or the law under which it was passed an unconstitutional effect, and the trial court gave it no such effect, though the plaintiff in error seeks a strict construction of the law and its application in an uncon-

stitutional manner so that it may escape the payment of an obligation for which a fair interpretation of the law makes it liable.

Judgment affirmed.